The opinion of the Court was delivered by
Fenner, J.
On the 20th October, 1877, at between 2 and 3 o’clock P. M., plaintiff became a passenger on car No. 18, of the defendant, a street railroad company, and, there being few passengers, seated himself with his body inclined towards the front of the oar, his side towards the open window, upon which his left arm rested with his elbow projecting out of the car a few inches. While thus situated, the said car No. 18, at a certain curve in the track, met car No. 4 of the same company, coming down an adjoining track of defendant, and in passing each other at this point, the last-named car struck defendant’s elbow, breaking his arm and otherwise injuring him, for which injuries he seeks redress in this action for damages.
The action rests upon the charge, that the plaintiff’s injury was caused by the fault or negligence of the defendant. The defense is two-fold : 1. Denial of negligence on the part of defendant; 2. Assertion of contributory negligence on the part of plaintiff.
Evidence responsive to pleadings, establishes the following essential facts:
Defendant’s original contract with the city, passed in 1865, authorized the construction of a double-track railroad, commencing on the neutral ground of Canal street at its junction with Magazine street, and required that “ the tracks shall he three feet distant from each other, from out to out of rail.” The road was built, and a turn-table constructed a,t the corner of Canal and Magazine.
By City Ordinance, approved October 14th, 1867, defendant was “ authorized and required to extend its road to the intersection of Canal and Camp streets,, and to establish a stand and turn-table ” at that point, “the City Surveyor to furnish the lines and levels for the extension, and to give full directions how the work is to he done, etc..”
Legal obstructions prevented the building of this extension until 1873, when application was made to the then City Surveyor to furnish lines and levels for the work.
The testimony of that officer, and of Ms employees, is quite positive, that they staked out the work from Camp street, to a point near the then existing turn-table of the company, beyond the intersection of Magazine street, hut did not complete the lines to the actual junction with the old road, because it would have interfered with the operations of the road during the construction; that after the part staked out liad *142 been built, they expected to be called on to complete tbe lines and levels; but that they were never so called on, and never laid out the additional work, which was done by the company without their knowledge. In this intervening’ space, is found the curve on which the injury to plaintiff occurred, and it is established by the report of experts appointed by the court that, at the narrowest point on this curve, the distance between the tracks is only two feet four and one-half inches “ from out to out of rails,” instead of three feet as required by the original contract.
Car No. 18, in which plaintiff was at time of injury, was of the class and size of cars ordinarily used by defendant and other city railroads. The report of experts shows the width of its body to have been 7 feet 3f inches, and the length 14 feet 2 inches.
.Car No. 4 which collided, was one of four special summer cars, bought by the defendant within four years prior to the accident, of which two were occasionally, and at certain seasons only, run over this portion of defendant’s road. It was much larger than the ordinary cai's, having a width of body of 7 feet Ilf inches and a length of 16 feet If inch.
The original contract of defendant required that “ the ears shall be •similar to those used on other city railroads.” The evidence is not very distinct as to what kind of cars were in fact “ used ” on other existing roads at the date of the contract; but it shows that defendant, from the commencement of its operations, had used cars similar to, or not substantially variant from, car No. 18 in size, up to the date of purchase of the four cars of exceptional size above referred to, which were the only ones it ever used substantially differing from car No. 18.
The report of experts shows that when cars 18 and 4 were placed, at rest, and side by side, on this curve, there was a distance between the uprights of their respective windows of 4 3-16 inches. It appears, however, from the evidence, that when in motion, the wheels of each car have a lateral play on the rails of If inch; that the bodies being mounted on india-rubber springs, have a slight additional lateral play; and Anally, that the bodies of the cars project several feet in front of the wheels, so that (the curve in each track being inward toward the other track) in passing the curve, as the bodies are only deflected when the wheels reach the successive points of curvature, an additional proximity is created between the cars in passing each other. All these elements concurring, it is evident that, under conditions likely to occur, cars Nos. 4 and 18, in passing, at the same time, the narrow point of this curve, might graze, if not collide with, each other; and there is some evidence tending to show that, on this particular occa *143 sion, such collision did actually occur. Tliis, however, is disputed, and is of no consequence.
The evidence, as well as common observation, establishes that it is a customary practice for persons riding in the street cars of this city, when not crowded, to sit with an arm resting- on the window and projecting more or less outside of the car. This practice is suggested, if not invited, by the construction of the windows, which are of a height that renders such a position easy and comfortable, and also ■ by the natural inclination to face the direction in which one travels, to look out at passing objects, and, in a climate like ours, to turn the face so as to catch the breeze. The practice is so common that no one could possibly ignore its existence. Under customary conditions of construction universally prevalent here, the distance between parallel tracks and between passing cars is such as to render the practice absolutely free from danger of such collision as that which injured plaintiff. It does not appear that there is any point on any railroad in the city where cars would pass each other so closely as to expose a person in the position of plaintiff to the slightest danger. It is affirmatively shown that there is no such point on the line of defendant except this particular one, and even there, the injury could not have happened but for the exceptional width of one of the cars.
It appears that on certain roads where tracks are bordered by avenues of trees, rendering such exposures of the person perilous, care is taken to post notices or to construct wire-screens to prevent them. Upon the up-town portion of defendant’s line, where the wide cars like No. 4 were more commonly used, defendant has given special instructions to its drivers to be careful in passing each other on a curve existing there although the tracks were three feet apart. But at this Canal street curve, with so much narrower space between the tracks,' no such instructions were given, no notices of any kind wex-e posted, no precautions taken, and, ixi point of fact, at the time of this accident, car No. 4 was passing the other caí-, in this curve, at a full trot, and without the driver’s paying any attention to the position of passengers in either car.
We have been thus explicit in stating facts and circumstances, because, in cases involving questions of negligence, or that kind'of fault which corresponds to the culpa lews of the civil law, the difficxxlty lies not so much in ascertaining the legal principles, as in applying them to particular states of fact.
We may, at the oxxtset, say that the doctrine of contributory negligence on the part of plaintiff, as a valid defense in such actions, is too firmly rooted in our jurisprudence to be open to further question. Quod quis ex culpa sua damnum sentit, non intelligitur darnmm smttre. *144 Where the injury results from the negligence of plaintiff and the negligence of defendant, in such manner that the negligence of each may be considered as a juridical cause of the injury, the law will not undertake to apportion either the blame or the damage. As said by a learned judge, “the law has no scales to determine in such cases, whose wrong doing weighed most in the compound that occasioned the mischief,” and by another, “ the law cannot measure how much the damage suffered is attributable to the plaintiff’s own fault. If he were allowed to recover, it might be that he would obtain from the other party compensation for his own misconduct.” Thompson on Neg. p. 1147.
It must'be observed, however, that, in determining what constitutes negligence, precisely the same rules must be applied to the acts of defendant charged as negligence and to the acts of plaintiff charged as contributory negligence.
Definitions of negligence by text-writers and judges are almost as numerous as the text books and decisions on the subject.
We venture, however, to give another, compounded from the definitions of negligence by Baron Alderson and by Mr. Wharton, and of the definition by the latter of “ negligence as the juridical cause of injury.” Wharton on Neg. Secs. 1, 3, 73.
Juridical negligence is the inadvertent omission to do something which it would be the legal duty of a prudent and reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, to do, or the inadvertently doing something which it would be the legal duty of a prudent a,nd reasonable man not to do— such act or omission being on the part of a responsible human being, and being such as in ordinary natural sequence immediately results in the injury complained of.
This definition, though perhaps redundant, includes, unequivocally, all essentials, and excludes acts not properly within the domain of negligence. It excludes offenses or intentional wrongs. It excludes mere moral duties. It excludes irresponsible persons, of whom various classes are mentioned by Mr. Wharton. And it excludes all acts or omissions, which, though they may be negligent, with reference to certain relations or contingencies, have no camal connection, with the injury complained of. ■ •
A man who commits a negligent act takes upon himself the risk of all injuries, which, according to common experience and in the exercise of reasonable foresight, might have been anticipated as the consequence thereof; but this is the extent of his responsibility.
As said by Mr. Wharton, “ the particular damage is to be viewed concretely, and the question asked, 'was this in ordinary natural sequence’ from the negligence? If so, the damage is imputable to the *145 party guilty of tlie negligence.” In the language of Lord Campbell, “ if the wrong and the legal damage are not known by common experience to be usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, the wrong or the damage are not sufficiently conjoined or concatenated, as cause and effect, to support the action.” Gerhard vs. Bates, 2 Ell. and Bl. 490.
Applying these principles to the facts of this case, which we have so fully and carefully stated, the first question is:
Was the defendant guilty of negligence?
Assuming that defendant violated the law, either in constructing its tracks so closely together, or in using cars of the width of No. 4, that alone would be sufficient to establish its fault. But although the preponderance of evidence is decidedly in favor of this assumption, yetas it is vehemently controverted and not absolutely free from doubt, we prefer to rest our decision on broader principles.
As a carrier of passengers, it is elementary that defendant’s duty was to exercise diligence, skill, care and foresight, to carry them safely. Penn. Co. vs. Roy, 102 U. S. 451.
It was bound to know that its passengers, in common with those on other street railways, were in the habit of riding with their arms resting on the window and projecting outside of the car ; that under the usual conditions of construction of parallel tracks in this city, this practice was free from danger of collision with passing cars on their respective tracks; that the width between its own tracks at this curve was exceptionally narrow; that the car No. 4 used by it was exceptionably wide; that such car, in running over that curve, was liable to meet another car; that, in such meeting, they would, under conditions perfectly probable, pass each other so closely as, if not to collide, to come very near touching; that, in such event, a passenger, in either car, occupying the position shown to be very commonly occupied, would inevitably be injured.
Knowing these things, a reasonable care for the safety of others would have dictated the duty of using precautions to avoid the danger. Sufficient precautions might have been used without any inconvenience to defendant. The curve was short, aiid but little delay would have been occasioned by forbidding their drivers to pass each other at that point; or by instructing them to drive slowly and give warning to exposed passengers; or by any other mode of effective notice. Defendant used no precaution of any kind. Its conduct presents every element of negligence, as defined by us. As well said by an able Judge: “ When we are engaged in an act which the surrounding circumstances indicate may be dangerous to others, and when the event whose occurrence is necessary to make our act injurious is one *146 which we can readily see, may occur under the circumstances and unite with the act to commit the injury, we are culpable if we do not take all' the care which prudent circumspection would suggest to avoid the injury.” Fairbanks vs. Kerr, 70 Penn. St. 86.
We are next to inquire whether plaintiff was guilty of any contributory negligence.
The sole negligence charged is his act in sitting as he did with his arm resting on the window, and his elbow projecting out of the car. Applying the principles already enunciated to the facts stated, we are of opinion that there is a comjdete want of causal connection between this act and the injury. We cannot express the principles applicable in such a case more forcibly than was done by the court in the case last quoted: “We are not to link together as cause and effect, events having no probable connection in the mind, and which could not, by prudent circumspection and ordinary thoughtfulness, be forseen as likely to happen, in consequence of the act in which we are engaged. It may be true that the injury would not have occurred without the concurrence of our act with the event which immediately caused the injury; but we are not justly called to suffer for it, unless the other event was the effect of an act, or was within the probable range of ordinary circumspection, when engaged in the act.”
It seems to us manifest, under the circumstances of this case, that no ordinary circumspection or foresight would have suggested to the most cautious person, situated as plaintiff was, the slightest probability of danger from the meeting of a car on a parallel track. Seeing a car so approaching, he would have been perfectly justified, according to all common experience, in diverting his attention and resting in the perfect confidence that it would pass without touching him.
If the car had jumped the track and had thus collided with the exposed arm of plaintiff, a different question would be presented. Quoad such a contingency, the act of plaintiff might have been juridically negligent. A prudent man might well foresee the possibility of strcli an occurrence, and might well be held to have taken upon himself the risk of such a peril. But viewing the particular damage here suffered concretely, Mr. Wharton’s question, “was it in ordinary natural sequence from the negligence,” must be answered in the negative.
The cases relied on by defendant’s counsel, as to similar exposures of person in steam railway carriages, have, in our opinion, no applicability here. They are founded upon the common experience, as Mr. Wharton justly says, “ of the closeness with which cars on double tracks and switches must necessarily pass to each other.” Wharton on Neg. § 360.
*147 The slightest observation of the construction, and operation of steam railways would serve to warn any one of the danger of such exposures resulting from the frequent proximity of tracks, as well as from other contingencies.
The precisely contrary result of observation and experience with reference to street railways in New Orleans, as shown by tbe evidence, removes this case from the operation of such authorities.
As to the quantum, of damages, the evidence shows that plaintiff suffered a fracture of the humerus and a dislocation of the elbow; that he was under treatment and confined to his bed or room for about two mouths, enduring much pain and suffering; that notwithstanding skilful surgery, he is left with his arm permanently disabled, incapable of flexing- it beyond an angle of 90 degrees, and then only with pain; his arm wasting for want of exercise, useless in feeding or dressing himself, or in his business, which is that of a tobacco weigher and sampler; occasioning him pain with every change of weather, and without hope of improvement.
We are not prepared to say that the verdict of the jury, awarding him $7500 as damages, is so excessive as to justify us in disturbing it.
The application of defendant to remand the case on the ground of newly discovered evidence, is refused. It would require an extraordinary state of case to induce us to follow the precedent set in Schneider vs. iEtna, 30 A. 1198.
Judgment affirmed, at cost of appellant.
Rehearing refused.